**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

CITY OF STERLING HEIGHTS POLICE & FIRE RETIREMENT SYSTEM, individually and on behalf of themselves and all others similarly situated, CITY OF BIRMINGHAM RETIREMENT AND RELIEF SYSTEM, and CITY OF PONTIAC GENERAL EMPLOYEES RETIREMENT SYSTEM,

    Plaintiffs,

v.

RECKITT BENCKISER GROUP PLC, RAKESH KAPOOR, ADRIAN HENNAH, SHAUN THAXTER, and ADRIAN BELLAMY,

    Defendant.

Case No. 2:19-cv-15382-BRM-JAD

**OPINION**

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Transfer to the United States District Court for the Southern District of New York ("SDNY") filed by Defendants Reckitt Benckiser Group PLC ("Reckitt"), Rakesh Kapoor ("Kapoor"), Adrian Hennah ("Hennah"), Shaun Thaxter ("Thaxter"), and Adrian Bellamy ("Bellamy") (collectively, "Defendants") seeking to transfer Plaintiffs' City of Pontiac General Employees' Retirement System, and City of Sterling Heights Police & Fire Retirement System (collectively, "Plaintiffs") Class Action Complaint ("Complaint") pursuant to Section 1404(a) of Title 28. (ECF No. 43.) The Motion is opposed. (ECF No. 52.) Having reviewed the submissions filed in connection with the motion and having declined to hold oral argument

pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, Defendants' Motion to Transfer is **GRANTED**.

## I. BACKGROUND

This matter stems from Reckitt's alleged defrauding of investors through false and misleading statements concerning the advantages of Suboxone Sublingual Film ("Film"). (*See generally*, ECF No. 37.) Reckitt is a consumer goods and health conglomerate headquartered in the United Kingdom with substantial operations in the United States. (*Id*. ¶ 24.) Its principal corporate offices are located in Parsippany, New Jersey, and the drug Suboxone is marketed and distributed in Richmond, Virginia. (*Id*.) Defendant Kapoor ("Kapoor") was the CEO and director of Reckitt from 2011 to 2019, Defendant Hennah ("Hennah") has been the CFO of Reckitt since February 2013, Defendant Thaxter ("Thaxter") has served as the CEO of RBP throughout the Class Period as defined in the Complaint, and Defendant Bellamy ("Bellamy") served as the Chairman of the Board of Directors (the "Board") of Reckitt from 2003 to 2018. (*Id*. ¶¶ 25-28.)

Before 2014, Reckitt subsidiary Reckitt Benckiser Pharmaceuticals ("RBP") was a specialty pharmaceutical business focusing on addiction treatments. (ECF No. 43 at 1.) RBP developed a drug called Suboxone to treat individuals with opioid addiction. (*Id*. at 1-2.) It was revolutionary because it could be prescribed in an office rather than at a clinic. (*Id*.) In October 2009, the exclusivity for Suboxone Sublingual Tablet ("Tablet") was set to expire, allowing generic competition. (ECF No. 37, ¶ 5.) RBF created a new formulation, Film, protected by patent until 2023. (*Id*.) Plaintiffs claim Defendants knowingly deceived the public about the safety of Film compared to Tablet. (*Id*.) Plaintiffs allege Defendants misled investors, physicians, patients, and healthcare benefit programs to believe Film was less likely than Tablet to be mistakenly used by children and to be illegally handled. (*Id*.)

On October 5, 2009, RBP asked the FDA if Film's packaging would protect against accidental child exposure. (*Id*. ¶ 6.) On March 29, 2019, the FDA responded, stating Film could be even more dangerous than Tablets. (*Id*. ¶ 72.) Defendants discontinued the Tablet form and told investors the Film was preferred over Tablets. (*Id*. ¶ 8.) The federal government began investigating Reckitt in 2011 regarding the misleading promotion, marketing, and sale of Film. (*Id*. ¶ 11.) In July 2014, Reckitt demerged RBP from Reckitt and RBP became known as Indivior Inc. ("Indivior"). (*Id*. ¶ 12.) The Department of Justice ("DOJ") indicted Indivior and announced, on July 11, 2019, Reckitt had agreed to pay $1.4 billion for liability concerning Suboxone. (*Id*. ¶¶ 15-16.) Additionally, the Federal Trade Commission filed a complaint for anticompetitive methods that persuaded patients to switch to Film before generic, less expensive Tablets reached the market. (*Id*. ¶ 16.)

Plaintiffs Birmingham and Sterling Heights purchased Reckitt American Depositary Shares and Pontiac purchased ordinary shares during the Class Period. (*Id*. ¶¶ 21-23.) They are bringing a class action on behalf of a class of all purchasers of Reckitt Securities between July 28, 2014 and April 9, 2019. (*Id.* ¶ 219.) Plaintiffs allege Defendants' conduct falsely inflated the price of Reckitt Securities and defrauded the purchasers of the Securities. (*Id*. ¶ 208.) They claim they suffered losses once the truth was disclosed and they would not have purchased securities if they had known the market price was inflated by misleading statements. (*Id*. ¶ 226.) Birmingham and Sterling Heights are suing under the Securities Exchange Act of 1934 on behalf of investors who purchased Reckitt American Depositary Receipts (the "ADR Claims") while Pontiac is suing under United Kingdom law on behalf of investors who purchased Reckitt ordinary shares on the London Stock Exchange (the "U.K. Claims"). (ECF No. 43 at 2.) The ADR Claims are subject to a forum-selection clause requiring Plaintiffs to file suit in the SDNY. (ECF No. 43 at 5-8.) The

U.K. Claims are subject to a clause requiring shareholder claims to be arbitrated, and if arbitration is deemed invalid, there is a forum provision stating that any shareholder claims must be litigated in the United Kingdom. (ECF No. 43 at 13-14.)

On January 16, 2020, Plaintiffs filed a five-count Amended Complaint as a class action against Defendants asserting claims for violations of §10(b) of the Exchange Act and Rule 10(b) against all defendants on behalf of ADS purchasers (Count One), violations of §20(a) of the Exchange Act against the individual defendants on behalf of ADS purchasers (Count Two), violations of English common law fraudulent misrepresentation and deceit against all defendants on behalf of Reckitt ordinary share purchasers (Count Three), violations of the Financial Services and Markets Act of the United Kingdom against Reckitt on behalf of Reckitt ordinary share purchasers (Count Four), and violations of English common law, negligent misrepresentation and misstatement against all defendants on behalf of Reckitt ordinary share purchasers (Count Five). (ECF No. 37.) On March 16, 2020, Defendants filed a Motion to Transfer Case to United States District Court for the Southern District of New York. (ECF No. 43.) On June 15, 2020, Plaintiffs filed a Brief in Opposition of the Motion to Transfer. (ECF No. 52.) On July 13, 2020, Defendants filed a Reply Brief to the Motion to Transfer. (ECF No. 53.) On July 20, 2020, Plaintiffs filed a motion to file a sur-reply, which was granted. (ECF Nos. 54 & 55.) Additional supplemental authority was filed by Plaintiffs on September 3, 2020. (ECF No. 56.)

## II. LEGAL STANDARD

A motion to transfer venue where there is no forum-selection clause is governed by 28 U.S.C. § 1404(a), which reads:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

Therefore, in deciding a motion to transfer, the Court must first determine whether the alternative forum is a proper venue. *Fernandes v. Deutsche Bank Nat'l Trust Co.*, 157 F. Supp. 3d 383, 389 (D.N.J. 2015); *see* 28 U.S.C. § 1391. When a plaintiff has laid a proper venue, "[t]he decision whether to transfer falls in the sound discretion of the trial court." *Park Inn Int'l, L.L.C. v. Mody Enters., Inc.*, 105 F. Supp. 2d 370, 377 (D.N.J. 2000). In exercising this discretion and ruling on such a motion, courts implement a balancing test and take into account the factors enumerated in § 1404(a) – namely, the convenience of the parties, the convenience of the witnesses, and the interests of justice – as well as a variety of private and public interest factors based on their relevancy to and effect on the litigation. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

"Within this framework, courts should place great weight on valid forum-selection clauses." *Park Inn Int'l*, 105 F. Supp. 2d at 377. "While a valid forum-selection clause is not dispositive, it is entitled to substantial consideration." *Id*. (citations omitted). If a forum-selection clause is valid, the plaintiff bears the burden of "demonstrating why they should not be bound by their contractual choice of forum." *Id*. A forum-selection clause is considered presumptively valid and enforceable unless the party objecting to its enforcement makes a strong showing of unreasonableness. *Cadapult Graphic Sys., Inc. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 564 (D.N.J. 2000). A party can establish "unreasonableness" only if: (1) "[the clause] is the result of fraud or overreaching," (2) "enforcement would violate a strong public policy of the forum," or (3) "enforcement would . . . result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *Id*. at 565 (quoting *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir.), *cert. denied*, 464 U.S. 938 (1983); *Union Steel Am. Co. v. M/V Sanko Spruce*, 14 F. Supp. 2d 256, 686 (D.N.J. 1998)).

Where a motion to transfer venue is based on a forum-selection clause, the Court must assume the parties' private interests "weigh entirely in favor of the preselected forum." *Atlantic Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 134 S. Ct. 568, 582 (2013). In other words, "the 'interest of justice' is served by holding parties to their bargain." *Id*. at 583. Therefore, the Court cannot consider arguments about the parties' private interests. *Id*. It is inferred that whatever inconvenience the parties would suffer by being required to litigate the matter in the contractual forum as they agreed to do "was clearly foreseeable at the time of contracting." *Id*. As a result, a district court may only consider public interest factors. *Id*. A party seeking to avoid a forum-selection clause has the burden of establishing that public interests disfavoring the transfer outweigh the parties' choice. *Id*. at 581-82. "Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id*. at 582. The Supreme Court has stated:

> When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place. In all but the most unusual cases, therefore, the interest of justice is served by holding parties to their bargain.

*Id*. at 583.

Where both contracting and non-contracting parties to the forum selection clause are found in the same case, there is a four-step analysis to determine if the Court should retain all claims, transfer all claims, or sever and transfer only the claims subject to the forum selection clause. *In re: Howmedica Osteonics Corp.*, 867 F.3d 390 (3d Cir. 2017). The first step requires the Court to examine whether the claims by parties who agreed to a forum-selection clause should be litigated in the designated forum under *Atlantic Marine*. *Id*. at 404. The Court should litigate the claims in

6

the forum designated by the clauses "[i]n all but the most unusual cases." *Id*. (quoting *Atl. Marine*, 134 S. Ct. at 583).  Next, the Court analyzes the claims not subject to the forum-selection clause using the private and public interest factors listed in § 1404(a). *Id*. If this analysis of the interests of the parties who did not sign the forum-selection agreement points to the same forum as the parties who did agree to the forum-selection clause, the case should proceed in that forum. *Id*. If not, the next step is to consider severance according to Federal Rule of Civil Procedure 21. *Id*.

The Court should sever and transfer claims to remedy defects where "severance clearly will be warranted to preserve federal diversity jurisdiction; to cure personal jurisdiction, venue, or joinder defects; or to allow for subsequent impleader under Federal Rule of Civil Procedure 14." *Id*. If no threshold issues exist that clearly warrant severance, the last step is for the Court to determine whether it should retain the entire case, transfer the entire case, or sever parties or claims by weighing the "interests weighing against enforcement of any forum-selection clause; the relative number of non-contracting parties to contracting parties; and the non-contracting parties' relative resources, keeping in mind any jurisdiction, venue, or joinder defects that the court must resolve." *Id*. at 405. The Court can only decline to enforce the forum-selection clause if the public interest in upholding the parties' expectations "overwhelmingly" outweighs interests for enforcing the clause. *Id*. (citing *Atl. Marine*, 134 S. Ct. at 581).

### III. DECISION

#### A. ADR Claims

Plaintiffs argue the public interest factors overwhelmingly outweigh the forum-selection clause for the ADR Claims. (ECF No. 52 at 14.) They argue that New Jersey has interests at stake to protect because the alleged tortious conduct occurred within the state, where the claims arose. *Id*. They also assert that the public interest in assuring that "localized controversies [are] decided

at home" favors New Jersey because it is where Reckitt headquarters is located, Soboxone Film was manufactured, Reckitt's marketing materials were created, and the fraud investigation began. (ECF No. 52 at 16-17.) Additionally, none of the parties reside in the Southern District of New York. (ECF No. 52 at 16.) Plaintiffs emphasize the interest of New Jersey in regulating pharmaceutical companies based in the state and statewide efforts regarding opioid abuse. (ECF No. 52 at 18.) Plaintiffs also argue Reckitt ADS purchasers did not negotiate the Deposit Agreement between Reckitt and JPMorgan, therefore they did not formally agree to the forum-selection clause. (ECF No. 52 at 19.)

Under the first step of the *Howmedica* framework, the Court finds the ADR claims should be transferred to the Southern District of New York. When the forum-selection clause designates a forum, it should be "given controlling weight in all but the most exceptional cases." *Atl. Marine*, 134 S. Ct. at 581 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). Birmingham and Sterling Heights are contractually bound to the ADRs they purchased, because "an issuer who sponsors and ADR enters into an agreement" which "establishes the terms of the ADRs and the rights and obligations of the parties." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 367 (3d Cir. 2002). Defendants seek to enforce the forum-selection clause, so we presume the ADR claims should be litigated in the Southern District of New York.

Plaintiffs have failed to show the forum-selection clause for the ADR claims is invalid and enforcement of the forum-selection clause would be unreasonable or violate public policy. A party can establish "unreasonableness" only if: (1) "[the clause] is the result of fraud or overreaching"; (2) "enforcement would violate a strong public policy"; or (3) "enforcement would . . . result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *Cadapult Graphic Sys.*, 98 F. Supp. 2d at 565. Although the claims arose in New Jersey, the Defendants are subject to a

binding forum-selection clause specifying jurisdiction in the Southern District of New York because of the Deposit Agreement.

### B. U.K. Claims

Plaintiffs contend in addition to the public interests listed above, the private interests of the parties favor litigating all claims in New Jersey. (ECF No. 52 at 20.) These private interests are:

> (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records.

*Id*. Plaintiffs argue that, if necessary, the Court should sever the U.K. claims and keep them in New Jersey. *Id*.

The ADR claims and U.K. claims point to two different venues. The second step of the *Howmedica* analysis is to weigh the private and public factors set forth in § 1404(a) for the parties not bound by the forum-selection clause to determine whether those claims should be transferred. *Howmedica*, 867 F.3d at 404 (citing *Jumara*, 55 F.3d at 879-81). The first private interest of plaintiff's forum preference favors New Jersey, where the suit was originally filed. *Jumara*, 55 F.3d at 879. The second private interest to consider is defendant's preference which weighs in favor of Southern District of New York because Defendants are moving to transfer to that district. *Id*. The third factor, whether the claims arose elsewhere, weighs in favor of New Jersey. *Id*. As Defendants have pointed out, New Jersey is where Reckitt United States headquarters is located, Soboxone Film was manufactured, Reckitt's marketing materials were created, and the fraud investigation began. (ECF No. 52 at 16-17.) Next, the Court considers the parties' convenience based on their physical and financial condition, "convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora," and location of

9

books and records. *Jumara*, 55 F.3d at 879. Defendants do not argue that the District of New Jersey is inconvenient to them. The United States headquarters is in New Jersey; therefore, the district is convenient for witnesses and locating books and records. (ECF No. 37, ¶ 19.) Therefore, the private factors weigh in favor of the District of New Jersey.

The public interest factors to consider for the U.K. claims are the same as for the ADR claims. They include:

> enforceability of the judgment, practical considerations that could make the trial easy, expeditious, or inexpensive, the relative administrative difficulty in the two fora resulting from court congestion, the local interest in deciding local controversies at home, the public policies of the fora, and the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara*, 55 F.3d at 879. The enforceability of the judgment is neutral because neither the District of New Jersey nor the Southern District of New York is listed in the arbitration clause for the U.K. claims. The second factor, "considerations that could make the trial easy," weighs in favor of New Jersey because as Plaintiffs argue, New Jersey is the "center of gravity." (ECF No. 52 at 14.) As mentioned above, many of the business activities occurred in New Jersey. The third factor, administrative difficulty, is neutral. The fourth public interest factor, local interest, weighs in favor of New Jersey because the district has an interest in litigating claims of pharmaceutical companies based in the state. (ECF No. 52 at 17.) The fifth and sixth factors do not weigh for either District of New Jersey or Southern District of New York because each court is equally able to handle the additional burdens of a trial on their dockets and the judges in both districts are equally capable at applying English law. (ECF No. 52 at 18-19.) The public and private interest factors weigh slightly in favor of New Jersey. Because the ADR claims pointed to the Southern District of New York, we proceed to the third step of the *Howmedica* analysis.

Next, we "consider threshold issues such as the presence of indispensable parties and defects in subject-matter jurisdiction, personal jurisdiction, venue, or joinder" to determine whether to transfer the entire case or sever the claims. *Howmedica*, 867 F.3d at 408. Defendants argue that it would not be practical to sever the U.K. claims to keep them in the District of New Jersey because they are unlikely to be litigated in any court in the United States. (ECF No. 43 at 13.) The shareholders of the U.K. claims are subject to a clause in Reckitt's Articles of Association requiring shareholder claims be arbitrated. (ECF No. 43 at 14.) There is also an exclusive forum provision stating that if arbitration is deemed invalid, claims must be litigated in the United Kingdom. *Id*. Plaintiffs argue the claims are not subject to the arbitration or exclusive forum provision because they are inapplicable regarding tort claims. (ECF No. 52 at 26.) This is contrary to the plain text in the Articles of Association which reads:

> All disputes: . . . between a shareholder in that shareholder's capacity as such and the company and/or its directors arising out of or in connection with these articles or otherwise . . . will be exclusively and finally resolved under the Rules of Arbitration of the International Chamber of Commerce.

(ECF No. 43. Ex. B at 61 (Article 132 of Reckitt's Articles of Association).) Severance is clearly "warranted to preserve federal diversity jurisdiction; to cure personal jurisdiction, venue, or joinder defects; or to allow for subsequent impleader." In this case, there is no such situation that would require severance, so we proceed to the final step of our analysis.

The last step is to exercise our discretion in choosing the most appropriate course of action by weighing the interests in avoiding duplicative litigation against non-contracting parties' private interests. *Howmedica*, 867 F.3d at 405. When deciding whether to retain the entire case, transfer the entire case, or sever parties or claims, the Court "considers the nature of any interests weighing against enforcement of non-contracting parties to contracting parties; and the non-contracting parties' relative resources, keeping in mind any [. . .] defects that the court must resolve." *Id*. The

11

Court may decline to enforce a valid forum-selection clause only if the strong public interest to uphold the contracting' parties expectations outweighs the countervailing interests. *Id*. To determine how to proceed with the claims, we must analyze the "considerations of efficiency, the non-contracting parties' private interests, and *Atlantic Marine*'s directive that 'courts should not . . . disrupt the parties' settled expectations.'" *Id*.

The interest of efficiency favors the transfer of all claims to the Southern District of New York. The ADR claims must be transferred because of the forum-selection clause signed by the contracting parties, and therefore, the U.K. claims should be transferred with them. As Defendants argued, the U.K. claims are unlikely to be litigated in any United States court system. (ECF No. 43 at 13.) Severing the claims to keep them in this Court would prolong the process of getting the claims transferred to the U.K. and is inefficient. The non-contracting parties' private interests also weigh in favor of transfer to the Southern District of New York. Transferring the U.K. claims will not prejudice the parties because the claims need to be arbitrated in the U.K. so there is no measurable difference to those Plaintiffs if the claims are transferred to a "contiguous federal district court[]." (ECF No. 43 at 15.) The last factor, party's settled expectations, is neutral because those plaintiffs signed clauses to arbitrate in the United Kingdom. When the case is transferred to the Southern District of New York, those claims can be severed and transferred if the Court finds it necessary.

### IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Transfer Venue to the United States District Court for the SDNY (ECF No. 43) is **GRANTED**.

**Date: November 30, 2020**                     */s/ Brian R. Martinotti*
                                                **HON. BRIAN R. MARTINOTTI**
                                                **UNITED STATES DISTRICT JUDGE**